IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MARJORAM ORRIS JONES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV 318-070 |
| FREDERICK JOHNSON; CHARLES DENSON; TIMOTHY HOWARD; RODNEY MCCLOUD; and MAINTENANCE PERSONAL, | ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Ware State Prison in Waycross, Georgia, brought this case pursuant to 42 U.S.C. § 1983, concerning events at Telfair State Prison ("TSP") in Helena, Georgia. Plaintiff is proceeding *pro se*. Before the Court is Defendants' motion for judgment on the pleadings, (doc. no. 15), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

**I.     BACKGROUND**

On October 1, 2018, Defendants removed this case from Telfair County Superior Court and on the same day filed a Verified Special Appearance Answer and Defenses in Telfair Superior Court. (Doc. no. 1; doc. no. 1-1, pp. 65-77.) After removal, Plaintiff filed a second amended complaint naming the following Defendants: (1) Frederick Johnson; (2) Charles Denson; (3) Timothy Howard; (4) Rodney McCloud; and (5) "Maintenance

Personal." (Doc. no. 5.) Taking all of Plaintiff's factual allegations as true, the facts are as follows.

On November 11, 2017, at 11:00 a.m., Defendant Frederick Johnson, Unit Manager at TSP, told Plaintiff to pack his belongings and move to a new cell. (Id. at 2.) When he arrived at the new cell, Plaintiff noticed water on the floor and told Sergeant Woods about the water. (Id.) Plaintiff also told Sergeant Cray and two other unknown officers he needed a mop. (Id.) Plaintiff traced the source of the leak to the sink and toilet, noticing every time he flushed more water would leak. (Id.) The day after being placed in the new cell, Plaintiff filed a complaint with Unit Manager Johnson, who only "brushed the problem aside." (Id.) Plaintiff spoke to Defendant "Maintenance Personal," unknown maintenance workers at TSP, but they only told Plaintiff everything was working fine. (Id.)

From November 11 to November 15, 2017, Plaintiff was without water and a working toilet. (Id.) On November 15, 2017, at around 3:00 p.m., Plaintiff told Sergeant Cray about the problem again, which made her mad and she refused to bring Plaintiff his dinner tray. (Id.) Sergeant Cray placed the dinner tray just outside the cell door, so Plaintiff could see it when he opened the tray flap of his cell. (Id. at 3.) Five minutes later, Unit Manager Johnson came to Plaintiff's cell asking what was wrong, to which Plaintiff responded he had no water and needed maintenance to fix the problem. (Id.) In response, Unit Manager Johnson told Plaintiff to pack his belongings for transfer to a new cell. (Id.) Unit Manager Johnson also asked Plaintiff why he threw his dinner tray earlier. (Id.) Plaintiff did not know to what tray she was referring. (Id.) Six other officers transported Plaintiff to a new cell. (Id.)

When he arrived at the new cell, Plaintiff asked to speak with Unit Manager Johnson.

(Id.) However, Defendant Charles Denson, Lieutenant, appeared and told Plaintiff Unit Manager Johnson did not have time. (Id.) Lt. Denson told Plaintiff to give him his handcuffs or "to pay" then left with Plaintiff still handcuffed and returned with a can of pepper spray. (Id.) Lt. Denson released a full can of "riot pepper spray" into Plaintiff's face while handcuffed and left Plaintiff there for ten minutes. (Id.) Plaintiff panicked because he could not breathe, and in an attempt to breathe, he opened his cell window to let in fresh air. (Id.) However, an officer jammed the flap with a "net bag." (Id.) Ten minutes later, Plaintiff was taken out of his cell and placed in a shower for two minutes without any soap or rag. (Id.) Plaintiff returned to his cell and was instructed to strip naked. (Id.) Plaintiff remained naked for eighteen hours. (Id.) During this time, Plaintiff was never transported to medical, and he constantly asked for water. (Id.)

On November 16, 2017, Plaintiff ate no breakfast or dinner because Lt. Denson and Unit Manager Johnson gave orders to refuse Plaintiff food. (Id.) On November 17, 2017, officials denied Plaintiff food again, but Warden Phillip Hall, in making his rounds, instructed officers to give Plaintiff his meal despite Lt. Denson and Unit Manager Johnson's orders. (Id.) Warden Hall stated he would speak to Lt. Denson and Unit Manager Johnson about refusing food. (Id. at 4.) On November 18, 2017, Lt. Denson told Plaintiff "it is what it is, let's move on," and Unit Manager Johnson refused to speak when he saw Plaintiff leaving the shower. (Id.)

Plaintiff alleges he filed a grievance concerning the above allegations. (Id.) However, he states his grievances were denied. (Id.) Plaintiff does not allege he appealed the

3

denial.  Plaintiff seeks $25,000 in compensatory damages against Defendants jointly and severally and $25,000 in punitive damages.  (Id.)  Plaintiff is suing Defendants in their individual capacities.  (Id.; doc. no. 25, p. 3.)

On November 15, 2018, Defendants filed a motion for judgment on the pleadings, arguing (1) Plaintiff failed to properly exhaust his claims; (2) Defendant Rodney McCloud cannot be held under the *respondeat superior* doctrine; (3) Plaintiff failed to state a claim for excessive force against Defendants McCloud, Johnson, and Howard; and (4) Plaintiff failed to state a claim based on conditions of confinement under the Eighth Amendment for his faulty toilet and sink.  (Doc. no. 15-1.)  Defendants attached Plaintiff's grievance history, the Georgia Department of Corrections Standard Operating Procedure ("GDOC SOP") for grievances, and a declaration by Cathy Lewis concerning the grievance procedure and Plaintiff's grievances.  (Doc. nos. 15-2 – 15-4.)  Plaintiff's grievance history shows he did not file any grievances after November 11, 2017, until July 6, 2018, at Hancock State Prison.  (Doc. no. 15-4.)  Plaintiff responded to Defendants' motion, but he has not provided any evidence in dispute.  (Doc. nos. 25, 25-1.)

## II. DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

### A. The Legal Framework

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation omitted).  "We accept as true all material facts alleged in the non-moving party's pleadings, and we view those facts in the light

most favorable to the non-moving party." Id.  As a motion for judgment on the pleadings under 12(c) and a motion to dismiss under 12(b)(6) are almost identical in form and relief, courts apply the same legal standard in assessing both motions.  See Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc., 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) ("The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6).") (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).

Under the Rule 12(b)(6) standard, the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits.  Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must

5

provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Where, as here, Defendants argue Plaintiff failed to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendants' motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendants bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion for judgment on the pleadings should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at

---

[1]Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending.  See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Finally, the court affords a liberal construction to a pro se litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, this liberal construction does not mean that the court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. The Administrative Grievance Procedure

Based on the date of the alleged incidents, the administrative grievance procedure applicable in this case is the version of the GDOC's Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015.  (See doc. no. 15-3.)  The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor.  Id. § VI(D)(1)-(4).  "The complaint on the Grievance Form must be a single issue/incident."  Id. § VI(D)(2).  Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it.  Id. § VI(D)(3), (5)(a).  If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office.  Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will

appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. Id. § VI(E)(7).

### C.     Plaintiff's Failure to Exhaust

Plaintiff's claims should be dismissed because the complaint fails to allege he properly exhausted his administrative remedies as to all claims. Under the first step of Turner, Plaintiff's claims are subject to dismissal because Plaintiff only alleges to have filed grievances but not appealed them. (Doc. no. 5, p. 4.) The Eleventh Circuit requires prisoners to complete the administrative process before initiating suit. Poole, 312 F. App'x at 166; see also Higginbottom, 223 F.3d at 1261. The grievance process is not complete until after an inmate receives a response to his grievance appeal or until the time period in which the Commissioner has to respond expires. See SOP IIB05-0001 § VI(E). There is no

evidence or allegation in Plaintiff's second amended complaint showing Plaintiff appealed his grievances, let alone received a response from the Central Office of the Commissioner. Thus, Plaintiff failed to properly exhaust his claims under the first step of Turner.

Even if Plaintiff's second amended complaint showed, on its face, he properly exhausted his claims, under the second step of Turner, Plaintiff's claim should be dismissed. The undisputed evidence submitted by Defendants proved, contrary to Plaintiff's complaint allegations, he never filed any grievances concerning any of the events alleged in the complaint. (See doc. no. 15-4.) Plaintiff had ten calendar days from November 18, 2017, at the latest, to file a formal grievance. SOP IIB05-0001 § VI(D)(4). Defendants argue and provide Plaintiff's grievance history showing he did not file any grievances between November 11, 2017, and July 6, 2018. (Doc. no. 15-4.) Plaintiff has not provided any opposing evidence. Thus, Plaintiff has failed to properly exhaust his claims under step two of Turner.

Plaintiff argues he timely submitted grievances to Counselor Brown within ten days of the incidents and it was Counselor Brown's job to insure Plaintiff's rights were not violated with respect to the grievance process. (Doc. no. 25-1, p. 3.) Plaintiff alternately states Counselor Brown denied the grievances, misplaced them, or perhaps refused to process them. (Id. at 4.) Even if he never received a ruling after submitting the grievance, GDOC SOP requires Plaintiff to submit an appeal of the non-action to the Central office. See SOP IIB05-0001 § VI(E). The Court finds Defendants have carried their burden of showing Plaintiff failed to exhaust his administrative grievances. Plaintiff's laundry list of inconsistent excuses is not credible. See Kozuh v. Nichols, 185 F. App'x 874, 876-78 (11th

Cir. 2006) (holding inmate did not properly exhaust grievance process where he offered only allegations of records and documents being destroyed). Accordingly, Plaintiff's claims are procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendants' motion for judgment on the pleadings should be granted.

In light of the Court's conclusion Defendants' motion for judgment on the pleadings should be granted due to Plaintiff's failure to exhaust his administrative remedies, it is unnecessary to address the merits of Defendants' additional arguments.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for judgment on the pleadings be **GRANTED**, (doc. no. 15), and this case **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of May, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA